IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JAMES W. BARCLAY,
    Plaintiff,

vs.                                        Case No.: 5:16cv144/MW/EMT

CENTURION OF FLORIDA LLC,
    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

This matter is before the court on a motion to dismiss filed by Defendant Centurion of Florida, LLC ("Centurion") (ECF No. 73). Plaintiff James W. Barclay ("Barclay") filed a response in opposition to the motion (ECF No. 78). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Upon consideration of the submissions, the parties' arguments, and the relevant law, the undersigned concludes that Centurion's motion to dismiss should be granted, and Barclay's claim dismissed for failure to exhaust administrative remedies prior to filing this lawsuit.

I.      BACKGROUND

Barclay, an inmate of the Florida Department of Corrections ("FDOC") proceeding in forma pauperis, commenced this case by filing a civil rights complaint under 42 U.S.C. § 1983 (Complaint, ECF No. 1). Counsel appeared on Barclay's behalf (ECF No. 49) and filed a Fourth Amended Complaint, which is the operative pleading (Fourth Amended Complaint, ECF No. 52). Barclay asserts an Eighth Amendment claim of deliberate indifference to his serious medical needs (*id.* 15–17). As relief, Barclay seeks monetary damages, a declaration that Centurion violated his constitutional rights, and an injunction requiring Centurion to provide him a consultation with an "outside" medical expert and all treatment recommended by that medical expert (*id.* at 17–18).[1]

Centurion seeks dismissal of Barclay's claim on the following grounds: (1) Barclay failed to exhaust administrative remedies prior to filing this lawsuit; and (2) Barclay's factual allegations fail to state a plausible Eighth Amendment claim (*see* Motion to Dismiss, ECF No. 73). Centurion submitted copies of administrative grievances in support of its exhaustion defense (Sealed Exhibits, ECF No. 76).

---

[1] Barclay previously settled his claims against the other Defendants named in the Fourth Amended Complaint (*see* ECF Nos. 79, 80).

Case No. 5:16cv144/MW/EMT

Barclay filed a Response in opposition to the motion to dismiss (Response, ECF No. 78). Barclay contends he alleged in his Fourth Amended Complaint that he fully exhausted his administrative remedies. Barclay contends Centurion failed to submit an affidavit or other documentation from the FDOC attesting to either the accuracy or the process by which administrative grievances are filed and reviewed; therefore, Centurion's attempt to assert an exhaustion defense "fails at this time" (*id.* at 2–3). Barclay additionally contends the factual allegations of the Fourth Amended Complaint state a plausible Eighth Amendment claim (*id.* at 3–6).

## II. EXHAUSTION STANDARD

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Bryant v. Rich*, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (internal quotation marks and citation omitted). Exhaustion of administrative remedies serves two main purposes: first, it protects administrative agency authority, in that it gives an agency an opportunity to correct its own mistakes with respect to the programs it administers

before it is haled into federal court, and it discourages disregard of the agency's procedures; and, second, it promotes efficiency, in that claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88–89, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citation omitted). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citations omitted). "Once the court makes findings on the disputed

issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

The FDOC's grievance procedures for grievances "of a medical nature" are set out in a standard operating procedure. *See Glenn v. Smith*, 706 F. App'x 561, 562–63 (11th Cir. 2017) (describing the relevant standard operating procedure for grievances "of a medical nature" and citing provisions of the Florida Administrative Code). The procedure has a two-part process. *Id.* (citing Fla. Admin. Code r. 33-103.008; rr. 33-103.006, 33-103.007). A prisoner claiming deficient medical care may, within 15 days from "[t]he date on which the incident or action being grieved occurred," submit a formal grievance to his prison. *Id.* (citing Fla. Admin. Code r. 33-103.011(1)(b)). If the prison denies the grievance, the prisoner may appeal the denial to the Office of the Secretary. *See id.* (citing Fla. Admin. Code rr. 33-103.007, 33-103.008).

III.   DISCUSSION

Here, the court need not proceed to the second step of the *Turner* analysis, because Barclay's complaint against Centurion is subject to dismissal at the first step. In Barclay's Response to Centurion's motion to dismiss, he relies upon the factual allegations set forth in the Fourth Amended Complaint, and repeats them verbatim:

22. During his stay at Bay Medical Center, BARCLAY underwent surgery which required the placement of three (3) screws in his right leg to treat the problem with his broken leg [according to a grievance Barclay attached to his initial Complaint, he was returned to an FDOC institution from Bay Medical Center by November 26, 2015 (*see* ECF No. 1, attached formal grievance signed by Barclay on November 26, 2015)]. In March 2017, BARCLAY underwent a second, unrelated surgery for his hernia pursuant to the class-action settlement against CORIZON for its deliberate and intentional failure to properly treat inmates with hernia issues for financial reasons.

23. On May 12, 2017, BARCLAY submitted an informal, Inmate Grievance, Grievance Number 209-1705-0237, to D.C. Hadad, complaining of intense pain in his right leg, which was sometimes so severe he could not walk because his right leg could not support his weight. This pain is caused by the original failure of NURSE DAVIS and NURSE MADDOX to provide care to BARCLAY in September 2015, when he was experiencing hernia pains and he fell while attempting to climb onto his upper bunk and broke his leg. BARCLAY received a response to this Grievance on May 31, 2017, stating he should address those concerns of intense leg pain, inability to walk, etc., in a Sick-Call Request. BARCLAY immediately submitted a Sick-Call Request.

24. On June 16, BARCLAY was placed on the Sick-Call List to see a Duty Physician in response to the Sick-Call Request he submitted after receiving the denial of Grievance Number 209-1705-0237. Meanwhile he continued to experience intense pain in his right leg.

25. On June 20, 2017, BARCLAY was seen by RMC Main Unit OPC (on-duty physician), Dr. Law, and it was her determination based on the x-rays of BARCLAY's hip and right leg area as well as his description of the symptoms he was experiencing, Dr. Law made a medical diagnosis of a disease known as a vascular Neurosis in the upper right leg, femoral bone in his hip joint area. Avascular Necrosis is a bone condition where the bone cartilage deteriorates due to a lack of living blood cells in that area of the bone. It can also be considered

a form of degenerative bone disease or cancer, but treatable only by replacement of the bone in that area so infected.

26. On July 28, 2017, a referral was made for BARCLAY to be seen by an outside orthopedic to determine the type of treatment needed. The Florida Department of Corrections and CENTURION OF FLORIDA, LLC, failed to follow through with the assessment and their delayed medical care constitutes deliberate indifference to his serious medical need that left his right leg worse and could be life-threatening, degenerative bone disease or cancer leading to BARCLAY's serious injury including death. Note: Centurion of Florida, LLC, replaced Corizon Health, Inc., as the Florida Department of Corrections contracted healthcare provider in May of 2016. This intentional refusal to provide BARCLAY with the outside orthopedic consult constitutes deliberate indifference to BARCLAY's serious medical condition for the sole purpose of causing him to suffer constant and severe pain with the full knowledge of his healthcare providers. Such medical delay is the moving force behind BARCLAY's hip and right leg deterioration. BARCLAY has no plain, adequate or complete remedy at law to redress wrongs described herein. BARCLAY has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which BARCLAY is seeking.

27. CENTURION has adopted the same policy of denying healthcare to inmates to enhance their economic profits they seek to maximize under their healthcare contract.

. . . .

54. Count V is brought against CENTURION pursuant to 42 U.S.C. § 1983 for deliberate indifference to the critical needs of BARCLAY as an individual with avascular necrosis which arose out of the failure to timely treat his broken leg which requires an outside orthopedic consult to prevent substantial health deterioration and even death.

55. CENTURION and/or its employees or agents knew from May 2017 that BARCLAY had severe pain resulting from his broken leg which was intensely painful which made it difficult for him to walk

and as a result of the complications from the broken leg he had previously suffered and if these things were not adequately addressed it could result in serious, irreparable harm or even death to BARCLAY. By July 28, 2017, CENTURION and/or its agents knew BARCLAY was suffering from severe and intense pain which required an outside consult based on the opinion of their own medical providers and have failed to do so.

56. Despite knowledge of BARCLAY's serious medical needs, CENTURION and/or its employees or agents were deliberately indifferent to those medical needs in failing to provide necessary medical care and treatment to BARCLAY solely for the purpose of limiting their costs and maximizing their profits under their contract with the State of Florida Department of Corrections to provide healthcare to inmates.

57. At all times relevant to this Complaint CENTURION's customs, policies and intentional delay in providing adequate medical healthcare for the plaintiff's serious medical needs constitutes deliberate indifference by subjecting the plaintiff, JAMES W. BARCLAY, to cruel and unusual punishment, through the unnecessary and wanton continued infliction of severe pain caused by their failure to follow through on the outside orthopedic consult. Defendant CENTURION's decision take the less efficacious course of treatment in the name of cost prevention and medical care actually provided by CENTURION is so cursory as to amount to no treatment at all thus depriving the plaintiff of his right to adequate health care treatment for his serious medical conditions under the Eighth Amendment.

58. As a direct and proximate result of CENTURION's intention [sic] and outright denial of medical treatment and/or deliberate indifference toward BARCLAY's serious medical needs and their failure to follow through on the outside orthopedic consult, BARCLAY has suffered grave physical injury, pain and discomfort and mental anguish in violation of BARCLAY's Eighth and Fourteenth Amendment rights.

> 59. As a result BARCLAY has suffered damages in an amount to be determined at trial for his bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for enjoyment of life, expense for his care and treatment in an effort to alleviate and cure his injuries and will continue to incur additional expenses in the future, the losses are either permanent or continuing and the plaintiff will suffer the losses in the future even after his release from prison.

(Barclay's Response at 3–6).

Taking Barclay's factual allegations as true, Centurion became the FDOC's contracted healthcare provider in May of 2016, the same month Barclay filed this §1983 lawsuit (*see* Complaint at 9).[2] Barclay alleges he first complained of intense pain in his right leg (shortly thereafter diagnosed as avascular necrosis), which is the serious medical condition underlying his deliberate indifference claim against Centurion, on May 12, 2017, when he submitted an informal grievance. This was one year <u>after</u> Barclay filed this § 1983 action. Taking Barclay's version of the facts as true, he did not exhaust his administrative remedies with respect to the medical condition underlying his claim against Centurion <u>prior to filing this § 1983 action</u>. Therefore, his claim should be dismissed without prejudice to his re-filing a § 1983

---

[2] Barclay filed his initial Complaint on May 26, 2016, when he placed it in the hands of prison officials for mailing. *See Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999) (citing *Houston v. Lack*, 487 U.S. 266, 275, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988)).

action upon exhausting administrative remedies.³ *See* 42 U.S.C. § 1997e(a); *Bryant*, 530 F.3d at 1372–73.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Defendant Centurion's motion to dismiss (ECF No. 73) be **GRANTED,** and Plaintiff's claim against Centurion be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies prior to filing this case;

2. That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida this 19th day of August 2019.

>   */s/ Elizabeth M. Timothy*
>   **ELIZABETH M. TIMOTHY**
>   **CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**

---

³ The statute of limitations for claims under § 1983 is four years. *See Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (four-year statute of limitations for § 1983 claims for which Florida is the forum state). Therefore, Barclay has adequate time to file another § 1983 action.

Case No. 5:16cv144/MW/EMT